IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BORGWARNER INC., and BORGWARNER MORSE TEC INC., <br><br> Plaintiffs, <br><br> v. <br><br> HILITE INTERNATIONAL, INC., AISIN SEIKI CO., LTD, and AISIN AUTOMOTIVE CASTING TENNESSEE, INC. <br><br> Defendants. | CIVIL ACTION NO. 07-C-3339 <br><br> **The Honorable Mark Filip** <br> **United States District Court Judge** <br><br> **Magistrate Judge Valdez** |

**MEMORANDUM IN SUPPORT OF
DEFENDANT HILITE INTERNATIONAL, INC.'S
<u>MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)</u>**

CLI-1567043

1

**I.       INTRODUCTION**

Defendant Hilite International, Inc. ("Hilite") incorporates by reference Parts II.A, B, D, and E and Parts III.A, B.2, and B.3 of Defendant Aisin Seiki Co., Ltd and Aisin Automotive Casting Tennessee, Inc.'s (collectively "Aisin") recently-filed Motion to Transfer Venue under 28 U.S.C. § 1404(a) (hereinafter "Aisin's Motion To Transfer").  (Docket No. 32.)  Hilite writes separately as to Part I, Part II.C, Part III.B.1, and Part IV.

**II.      FACTS**

Hilite is a Delaware corporation with its principal place of business in Cleveland, Ohio. (Complaint at ¶ 3.)  Hilite does not have any facilities or offices in Illinois and does not reside in the Northern District of Illinois.  (*See* Ex. A.)

Plaintiffs BorgWarner Inc. and BorgWarner Morse Tec Inc. (collectively "BorgWarner") recently litigated U.S. Patent No. 5,497,738 ("the '738 patent"), the same patent at issue here, in the District of Delaware ("the Prior Delaware Action").  In that action, the '738 patent was asserted against Hitachi, Ltd.'s variable camshaft timing components, such as cam phasers, spool valves and solenoids.  (*See* Ex. B, at docket entry 2.)[1]

That case was filed January 31, 2005 and settled on April 4, 2007.  In the twenty-six months the case was pending, the parties and the court was presented the following items:

(1) allegations of inequitable conduct during the prosecution of the '738 patent;

(2) the issuance of several third-party subpoenas;

(3) the issuance of Letters Rogatory allowing depositions to be taken in Japan;

(4) various motions regarding scheduling issues;

(5) various discovery-related motions;

---

[1] All exhibits referenced in this Memorandum are attached to the Declaration of Peter D. Siddoway in Support of Defendant Hilite International, Inc.'s Motion to Transfer Venue Under 28 U.S.C. § 1404(a).

CLI-1567043

(6) agreements concerning the authenticity of various documents;

(7) motion to bifurcate the claims of direct and contributory infringement;

(8) extensive Markman briefing including each party filing an opening and answering brief concerning claim construction;

(9) a motion for leave to file a sur-reply Markman brief and letter requesting oral argument on motion for leave to file;

(10) a motion for summary judgment that a particular reference was not a "printed publication" under 35 U.S.C. § 102(a) or (b);

(11) two motions for summary judgment of invalidity for failure to meet the "written description" requirement of 35 U.S.C. § 112 ¶ 1;

(12) a motion for summary judgment of non-infringement;

(13) a motion for summary judgment that any infringement was not willful; and

(14) three Daubert motions to either exclude or limit testimony of various experts.

(*See* Ex. B, Civil Docket For Case No. 05-048-SLR.) In these filings, BorgWarner took positions that could form the basis for judicial estoppel.

On August 22, 2007, co-defendant Aisin filed an action in the District of Delaware asserting two Aisin patents directed to variable camshaft timing components against BorgWarner. (*See* Ex. C.) Aisin's action was assigned to Judge Robinson, the same judge who presided over the Prior Delaware Action. (*See* Ex. D, 8/29/2007 Entry.) In BorgWarner's recent filing with this court, entitled Plaintiffs' Motion to Postpone Consideration of Defendants' Motion to Transfer and Supporting Memorandum of Law, BorgWarner expressed the opinion that these cases involve the same subject matter and should be handled by a single court. Hilite takes no position on that point, but accepting it as true, the question is, which court?

As indicated by the items listed above and by the docket for the Delaware action (which comprises forty-two pages when printed) the Delaware court appears to have devoted substantial time deciding issues of law and fact, many of which are likely to be at issue in this second litigation of the '738 patent. Thus, the efficient administration of the judicial system is better served by transfer to Delaware.

### III. ARGUMENT

#### B. Delaware Is The More Appropriate Forum

##### 1. The Interest Of Justice Overwhelmingly Supports Transfer To Delaware

The purpose of 28 U.S.C. § 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (*quoting Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)). Under § 1404(a),

> [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). As provided in Aisin's Motion To Transfer, a transfer of this case serves the convenience of the parties and witnesses, and this action could have been brought in the U.S. District Court for the District of Delaware.

With respect to the interest of justice, in this case, the efficient administration of the judicial system will be best served by transferring this case to the District of Delaware, where an action involving two of the same parties is already pending, and where a prior case involving the '738 patent was recently litigated. What follows is a review of that prior '738 litigation.

##### (a) BorgWarner's Motion to Strike Allegations of Inequitable Conduct

Shortly after the complaint in the Prior Delaware Action was filed, BorgWarner moved to

CLI-1567043

4

strike Hitachi's allegation of inequitable conduct. (*See* Ex. B, at docket entry 8.) That motion was denied by Judge Robinson. (See Ex. B, at docket entry 81.) In opposing the motion, Hitachi attached the prior art reference that it alleged BorgWarner had failed to disclose, and also attached over 200 pages from the interference proceeding in the Patent Office where BorgWarner allegedly became aware of the omitted prior art reference. (*See* Ex. B, at docket entry 15 (attached as Ex. E).) Hitachi argued that its pleading satisfied Fed. R. Civ. P. 9(b)'s particularity requirement, but nonetheless "in an overabundance of caution, in [its] brief, Hitachi pull[ed] out facts from [the] publicly-available prosecution histories and sets them forth herein to further detail the facts alleged in the Complaint." (Ex. E at 2.) Thus, to decide the motion, Judge Robinson had the prior art reference, the file history from an interference that had some relevance to the patent-in-suit, and Hitachi's detailed recitation of facts supporting its inequitable conduct allegation.

Hilite will certainly raise the same inequitable conduct issue that Hitachi raised in the Prior Delaware Action. The Delaware court's familiarity with the factual and legal issues presumably would streamline this case.

    **(b)**   **Hitachi's Motion For Leave To File An Amended Complaint To Allege Three Additional Bases Of Inequitable Conduct**

After the Prior Delaware Action had been pending for approximately sixteen months, Hitachi moved for leave to file an amended complaint in order to allege three additional bases of inequitable conduct. (*See* Ex. B, at docket entry 232 (attached as Ex. F).) The bases that Hitachi planned to assert were: (1) the failure of BorgWarner to disclose a prior art article written by a BorgWarner employee; (2) the failure of BorgWarner to disclose a co-pending patent application; and (3) misnamed inventorship on the '738 patent. (*See* Ex. F.)

The court denied leave to file because the motion was brought too late—only a month

before the end of the fact discovery cut-off date. (*See* Ex. B, at docket entry 255 (attached as Ex. G).) In this case, Hilite is likely to allege the same bases for inequitable conduct. The Delaware court's awareness and experience with the facts surrounding these issues supports a transfer to that court.

### (c) Discovery Proceedings Before the Special Master

In the Prior Delaware Action, Judge Robinson assigned a Special Master, and both parties filed several motions to compel that were handled in the first instance by the Special Master, and later entered as orders of the court. For example, BorgWarner filed a motion to compel under the theory that Hitachi had waived any claim of privilege for certain documents in relying on an opinion of counsel as a defense to a charge of willful infringement. (*See* Ex. B, at docket entry 247 (attached as Ex. H).) Hitachi filed a motion to compel production of BorgWarner documents alleging that inequitable conduct in the prosecution of the '738 patent implicated the crime-fraud exception to the attorney client privilege. (*See* Ex. B, at docket entry 248 (attached as Ex. I).) Finally, Hitachi moved to compel production of other documents, alleging that privilege had been waived by BorgWarner where certain documents had been provided to the Patent Office in an interference proceeding concerning two related BorgWarner patents. (*See* Ex. B, at docket entry 258 (attached as Ex. J).)

In ruling on each of these motions, the Special Master issued a detailed Report and Recommendations setting forth findings of fact and legal conclusions. For example, his ruling on Hitachi's motion to compel based on the crime-fraud exception was thirty-six pages long and included a discussion of the technology of the '738 patent, the '738 patent prosecution history, deposition testimony concerning the prosecution history and prior art, and an examination of the technical disclosure of the prior art to evaluate its level of materiality. (*See* Ex. B, at docket entry 248 (attached as Ex. I).)

CLI-1567043

6

All of the Special Master's Reports and Recommendations were entered as orders by Judge Robinson. (*See* Ex. B. at 9/07/2006 docket entry; 10/11/2006 docket entry; and 11/8/2006 docket entry.) Under Rule 53, in acting on the Special Master's Reports, the court reviews the findings of fact and legal conclusions de novo. Fed. R. Civ. P. 53(g)(3)-(4). Thus, these Reports were not simply discovery disputes dealt with by the Special Master outside of the judge's view. *See id.* These were decisions that were considered by Judge Robinson, and entered as orders of the court. All of these motions required analysis of technology, prosecution history of the '738 patent, and elements of patent law that are likely to arise in this case. And in the case of any rulings that were in favor of BorgWarner, they potentially form the basis for judicial estoppel regarding any decisions that are implicit in the underlying rational. The Judge who issued those orders, Judge Robinson, is in the best position to enforce such judicial estoppel.

### (d) Motions Fully-Briefed But Not Decided By The Court Because The Parties Settled The Case Several Months Later

In addition to the motions discussed above which resulted in a ruling from the court, there were several motions on which the Delaware court did not rule, even though the motions were fully-briefed. With respect to the former motions, it seems clear that Judge Robinson learned about the '738 patent, its prosecution history, and the relevant technology because she issued a ruling on the matter. In the case of the latter motions, it would be reasonable to conclude that the court reviewed the papers and considered the motions because the case was at a late stage when it settled, although there is no way of determining that solely from the docket of the Prior Delaware Action. These are described below.

#### (i) Claim Construction Briefing

There were twenty-five claim terms in dispute in the Prior Delaware Action and, following the convention in the District of Delaware, both parties filed opening claim

CLI-1567043

construction briefs and answering briefs. (*See* Ex. B, at docket entry 264, 267, 288, 291.) In addition to these four briefs, BorgWarner moved for leave to file a sur-reply claim construction brief and attached a fifth brief on the subject. (*See* Ex. B, at docket entry 298.) Hitachi then opposed the motion and BorgWarner filed a reply. (*See* Ex. B, at docket entry 320, 321.) Shortly after the reply was filed, Hitachi wrote a letter to Judge Robinson requesting oral argument on BorgWarner's motion. (*See* Ex. B, at docket entry 322.)

Although the court never held a Markman hearing or issued a Markman ruling, it seems likely that the court would have reviewed the parties' briefs. Such a conclusion is made more likely given the fairly unique circumstance where one party moved to file a supplemental brief and the other wrote a letter to Judge Robinson on the topic. (Ex. B, at docket entry 322.) In any event, claim construction is an important part of any patent litigation, and doubtless some, if not all, of the claims at issue in the Prior Delaware Action will be at issue in this case. Although the case settled before the court ruled on these claim construction issues, the briefing before the court was significant, and whatever knowledge the Delaware court extracted from that briefing further support a transfer to that court, as Judge Robinson is already familiar with the '738 patent.

    **(ii) BorgWarner's Motion For Summary Judgment That A Reference Did Not Qualify As Prior Art**

Another motion that was fully-briefed but on which the Delaware court did not issue a ruling was BorgWarner's motion for summary judgment that a reference did not qualify as prior art. (*See* Ex. B, at docket entry 269.) The parties attached various papers to their court filings which, if reviewed by Judge Robinson, would have provided her with knowledge about variable camshaft technology. (*See, e.g.,* Ex. B, at docket entry 286, 353 (attached as Ex. K and L).)

While the Delaware court did not rule on BorgWarner's motion, the briefing was complete. Under those circumstances, it would not be unreasonable to conclude that the court at

least reviewed the papers. Again, any knowledge that Judge Robinson gleaned from these papers puts that court in a position to streamline the present dispute, given that the same patent and same technology is at issue.

### (iii) Hitachi's Two Motions For Summary Judgment Of Invalidity

Hitachi filed two motions for summary judgment that the '738 patent was invalid because the patent's disclosure did not meet the Patent Act's written description requirement. (*See* Ex. B, at docket entry 272, 278.) BorgWarner opposed the motion and Hitachi filed a reply, so the motion was fully-briefed. (*See* Ex. A, at docket entry 310, 316, 349, 350.) Consideration of these motions for summary judgment of invalidity would require the court to examine in detail the specification of the '738 patent. Although it is not clear whether the court did in fact review the parties' briefs, is seems likely that some review would have begun because the case did not settle until several months after the briefing was complete. (*See* Ex. A, at docket entry 358.)

### (iv) Hitachi's Motion For Summary Judgment Of Non-Infringement

Hitachi's motion for summary judgment that its products did not infringe the '738 patent was fully-briefed, but a ruling was not issued prior to the case settling. (*See* Ex. B, at docket entry 282, 317, 348.) Although the Hitachi products accused of infringing the '738 patent are not at issue in the present case, the Delaware court would have obtained knowledge about the operation of variable camshaft products as well as the scope of the claims of the '738 patent in considering Hitachi's motion. And although there is no evidence from the docket whether the court did in fact consider the motion, any knowledge the court obtained would serve to streamline this case, which also involves the '738 patent.

### (e) Other Evidence That The Delaware Court Invested Significant Effort

In addition to the motions specifically noted above, the Docket for the Prior Delaware Action reflects that the parties had various discovery disputes and various motions concerning scheduling issues (*see* Ex. B, at docket entry 137, 182, 186, 257, 262), and the parties appeared before Judge Robinson several times on these issues. (*See* Ex. B, at docket entry 48, 64, 108.) In resolving these disputes, the court would have analyzed BorgWarner's conception and development of this invention and the prosecution of the '738 patent, as well as the claims and specification.

Furthermore, an examination of the Scheduling Order in the Prior Delaware Action (Ex. B, at docket entry 38 (attached as Ex. M)) and a Stipulation and Order to amend the schedule that the parties entered into (Ex. B, at docket entry 297 (attached as Ex. N)) reflect the substantial time and effort the parties and court invested in that case. According to the final agreement to modify the schedule, the parties had completed everything required to prepare the case for trial except (i) the exchange of fact witness lists, (ii) deposing any residual fact witnesses, and (iii) the pre-trial conference. (*Compare* Ex. M *with* Ex. N).

While both courts are equally able to apply Title 35 of the U.S. Code, that court has a more recent familiarity with the specific provisions of the Patent Act that are likely to be at issue. Consequently, the resources that the parties must expend in contesting these issues are likely to be significantly lower if this case is transferred to Delaware. *See Van Dusen,* 376 U.S. at 616 ("Section 1404 (a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice.").

**IV.     CONCLUSION**

For all the foregoing reasons, and for all the reasons stated in Defendant Aisin's Motion to Transfer Venue under 28 U.S.C. § 1404(a), Hilite respectfully requests that, pursuant to 28 U.S.C. § 1404(a), this Court transfer the above-captioned matter to the United States District Court for the District of Delaware.

Dated: November 16, 2007                                                    Respectfully submitted,


                                                                          s/ John M. Michalik
                                                   John M. Michalik
                                                   State Bar No. 6280622
                                                 jmichalik@jonesday.com
                                                 JONES DAY
                                                 77 West Wacker
                                                 Chicago, IL  60601-1692
                                                 Telephone:     (312) 782-3939
                                                 Facsimile:       (312) 782-8585

*Of Counsel:*
Timothy J. O'Hearn (*pro hac vice* app. pending)
tohearn@jonesday.com
Karl M. Maersch (*pro hac vice* app. pending)
kmmaersch@jonesday.com
Peter D. Siddoway (*pro hac vice* app. pending)
pdsiddoway@jonesday.com
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190                                                  *Attorneys for Defendant*
Telephone:     (216) 586-3939                                           *Hilite International, Inc.*
Facsimile:       (216) 579-0212

CLI-1567043

CLI-1567043