# Exhibit H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HITACHI, LTD., and UNISIA NORTH AMERICA, INC., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | C.A. No. 05-048-SLR |
| BORGWARNER, INC., and BORGWARNER MORSE TECH, INC., ) ) ) ) | |
| Defendants. ) | |

## SEVENTH DISCOVERY ORDER

The Special Master, having considered BorgWarner's May 17, 2006 motion to compel production of documents claimed by Hitachi to be privileged, as supplemented by the June 15, 2006, June 27, 2006, June 30, 2006, July 7, 2006, July 10, 2006, and July 11, 2006 submissions of the parties, finds as follows:

On May 17, 2006, BorgWarner filed a motion to compel the production of certain documents on Hitachi's privilege logs. Following the filing of BorgWarner's motion, Hitachi agreed to review and revise its privilege logs, and to provide additional descriptions of some of the documents contained on the privilege logs. On June 15, 2006, BorgWarner renewed its motion to compel. It claims that Hitachi has continued improperly to withhold certain documents on the privilege log, even though Hitachi voluntarily waived the attorney client privilege when it decided to rely on the advice of counsel to defend against BorgWarner's willful infringement claim.

Hitachi has voluntarily produced the April 30, 1999 legal opinion from Sughrue, Mion, Zinn, Macpeak & Seas, PLLC ("Sughrue Opinion"), and has stated that it will rely on the Sughrue Opinion to defend against BorgWarner's willful infringement allegations.

After production of the Sughrue Opinion, the parties disagreed about the scope of the waiver of the attorney client privilege caused by Hitachi's reliance on the Sughrue Opinion.[1] Counsel met and conferred on the issue, which resulted in a January 27, 2006 letter agreement ("Letter Agreement") drafted by BorgWarner's counsel and signed by counsel for both parties. It reads in pertinent part:

> In order to avoid burdening the Special Master with a discovery dispute regarding Hitachi's waiver of privilege and documents relating to such waiver, counsel for Hitachi and BorgWarner agree as follows:
>
> (i) Hitachi agrees that it will produce all documents and materials regarding the '738 patent (a) sent from the Sughrue law firm to Hitachi or any Hitachi subsidiary, and/or (b) sent to the Sughrue law firm from Hitachi or any Hitachi subsidiary. This includes, without limitation, the January 2005 opinion of counsel. Such documents shall be produced by February 2, 2006;
>
> (ii) BorgWarner agrees that pursuant to Hitachi's waiver it will not seek the production of (a) attorney notes of outside counsel that were never communicated to Hitachi or a Hitachi subsidiary, and/or (b) notes and communications of Hitachi's litigation counsel (i.e., Foley & Lardner), on Foley's representation that no Foley work product regarding the "738 patent has been shared with the Sughrue law firm;
>
> (iii) Hitachi stipulates that it will not rely on (a) any of the previously-withheld materials now being produced pursuant to (i) above, or (b) the advice of litigation counsel (i.e., Foley & Lardner) to defend against BorgWarner's allegations of willful infringement. Nothing in this paragraph, however, shall prevent Hitachi from relying on any of the materials produced (at HIT 441250-372) in November 2005, pursuant to Judge Robinson's Order;
>
> (iv) in addition, after Hitachi produces the documents identified in (i) above, BorgWarner can elect either (a) to have Hitachi put up a knowledgeable witness in the United States for a full day of testimony concerning the recently-produced documents, or (b) to forego such a deposition. If BorgWarner chooses (a), then Hitachi may rely on the recently-produced materials to defend against willfulness. If BorgWarner

---

[1] As the Federal Circuit stated in *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed.Cir. 2005), once a party states that it will rely on advice of counsel to defend against willful infringement charges, the attorney client privilege is waived as to the advice of counsel and "all other communications relating to the same subject matter."

2

chooses (b) and does not conduct such a deposition or otherwise "open the door" by introducing the newly-produced materials into evidence, then Hitachi's stipulation in (iii)(a) stands.

Hitachi argues that the plain meaning and intention of the Letter Agreement was to resolve the waiver issue once and for all. It claims that BorgWarner is reneging on the Letter Agreement in an attempt to take advantage of what BorgWarner argues is a recent favorable decision from the United States Court of Appeals for the Federal Circuit.[2] That decision addressed the scope of the privilege waiver when advice of counsel is invoked to defend against willful infringement claims.

BorgWarner claims that the Letter Agreement was limited to the Sughrue opinion and Foley & Lardner's work product, and was not intended to preclude BorgWarner from raising additional waiver issues that were not specifically addressed in the Letter Agreement. The parties appear to agree that the documents BorgWarner now seeks are not covered by the Letter Agreement.

I find that the Letter Agreement, prepared by BorgWarner, was clearly intended to be a comprehensive resolution of the Hitachi waiver issue, and therefore BorgWarner's motion to compel is denied. One need only look to the lead-in paragraph to the Letter Agreement, which states clearly that it was intended to resolve "a discovery dispute regarding Hitachi's waiver of privilege and documents relating to such waiver." The plain meaning of this language is just as it says - the parties intended to resolve their differences regarding Hitachi's waiver of privilege and documents relating to such waiver.

---

[2] *In re Echostar Commc'ns Corp.*, 448 F.3d 1294 (Fed. Cir. 2006). *Echostar* was decided May 1, 2006, well after the parties' Letter Agreement.

3

BorgWarner's arguments to the contrary are unavailing. It parses the key language by singling out the word "a," and argues that the parties only intended to resolve one discrete issue that was "known" to BorgWarner and Hitachi at the time. BorgWarner claims that a broader interpretation of the Letter Agreement is unwarranted when the events leading up to the Letter Agreement are considered. After reviewing the background facts, BorgWarner states that there were only two "known" disputes at the time of the Letter Agreement - whether Hitachi had improperly withheld a 2005 opinion and related documents from the Sughrue law firm, and whether Foley & Lardner had to produce notes and communications relating to validity and infringement of the '738 patent. According to BorgWarner, these were the only disputes to be resolved at the time, and BorgWarner did not intend to waive its rights to challenge other "unknown" waiver issues.

When interpreting agreements, words should not be read in isolation. Instead, the disputed language should be read in the broader context of the agreement as a whole, with the goal of discerning the intent of the parties. The language of the Letter Agreement unambiguously identifies the "dispute" being resolved, whether the dispute is characterized as "a" dispute" or "the" dispute – "Hitachi's waiver of privilege and documents relating to such waiver." That "dispute" was finally resolved by the specific terms of the Letter Agreement.

Hitachi has submitted correspondence from BorgWarner that fully corroborates the comprehensive nature of the Letter Agreement. In an earlier draft of the Letter Agreement, BorgWarner's counsel wrote: "If we cannot reach agreement on the above [the "above" being the language of what became the final Letter Agreement],

4

BorgWarner reserves its right to pursue all communications within the scope of Hitachi's subject matter waiver regarding the '738 patent."[3] This statement from BorgWarner shows a clear bargained-for exchange that ended the waiver dispute – BorgWarner offered to resolve the waiver issue and not seek "all communications" in exchange for Hitachi's assent to the terms proposed by BorgWarner.

Hitachi has also demonstrated that BorgWarner had knowledge of other documents listed on Hitachi privilege logs that could have been included in the negotiations leading up to the Letter Agreement, weakening BorgWarner's argument that its instant claims were "unknown" at the time of the Letter Agreement.[4] BorgWarner, the drafter of the Letter Agreement, could have, but did not, reserve rights to re-visit the waiver issue for "unknown" claims or documents.

Finally, BorgWarner argues that the language of subparagraph (ii) of the Letter Agreement supports its argument that BorgWarner reserved its rights to bring further motions to compel based on Hitachi's waiver of the privilege. It claims that the language of subparagraph (ii) of the Letter Agreement would be superfluous if the parties intended to resolve all of their waiver disputes, because there would be no need to delineate what other documents BorgWarner waived its rights to seek from Hitachi.

Rather than signaling an intention to reserve BorgWarner's rights, however, I view subparagraph (ii) as no more than documentation, as good attorneys do, of what the parties had specifically discussed and agreed to in their meet and confer leading up to the

---

[3] Exhibit 4 to Hitachi's June 27, 2006 Letter.
[4] Exhibit 5 to Hitachi's July 7, 2006 Letter. Although BorgWarner claims that the descriptions in the earlier logs were insufficient to place BorgWarner on notice that the communications involved validity or infringement of the '738 patent, after reviewing the privilege log it appears that the descriptions were sufficient to place BorgWarner on notice that outside counsel was conferring with Hitachi pre-suit, and a reasonable assumption could be made that part of that advice must have involved validity and infringement of the '738 patent.

5

Letter Agreement. It does not alter the key language of the Letter Agreement whereby the parties agreed to resolve "Hitachi's waiver of privilege and documents relating to such waiver."

BorgWarner's motion to compel based on waiver is therefore denied.[5]

Dated: July 21, 2006

_____
Special Master

---

[5] BorgWarner's June 15, 2006 Letter references other alleged deficiencies in Hitachi's privilege logs unrelated to the waiver issue. To the extent the parties have not already done so, they are instructed to meet and confer on the other issues raised in BorgWarner's letter. If any disputes remain, they should be promptly brought to the attention of the Special Master.

6